# United States Court of Appeals
## For the First Circuit

No. 04-1787

UNITED STATES OF AMERICA,

Appellee,

v.

JOSEPH BURHOE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Boudin, Chief Judge,
Lynch and Lipez, Circuit Judges.

Syrie D. Fried, Federal Defender Office, for appellant.
Paul R. Moore, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

May 23, 2005

**LYNCH**, <u>Circuit Judge</u>.  Joseph Burhoe was arrested for and confessed to armed bank robbery.  After the district court found probable cause justifying Burhoe's arrest and denied Burhoe's motion to suppress evidence found on his person at the time of his arrest and his post-arrest statements, Burhoe entered a conditional plea of guilty to the robbery.  The court then sentenced him to a term of 151 months' imprisonment, 3 years of supervised release, and $20,023.68 in restitution under the then-mandatory Sentencing Guidelines.

Burhoe appeals.  We affirm the denial of the motion to suppress but remand for resentencing in light of <u>United States</u> v. <u>Booker</u>, 125 S. Ct. 738 (2005).  <u>See</u> <u>United States</u> v. <u>Antonakopoulos</u>, 399 F.3d 68, 75 (1st Cir. 2005).

**I.**

On September 7, 2001, two men robbed a Citizens Bank branch located in a Shaw's Supermarket in Medford, Massachusetts.  At approximately 10:19 AM the Medford Police Department's (MPD) radio dispatcher broadcast information about the robbery.  The dispatcher described the two robbers as males who had committed the robbery with a knife and fled in a stolen black car.  MPD Officer Sheila Quinn reported over the radio that she was behind the stolen car (the license plate number had also been broadcast) and chasing it down Riverside Avenue towards the Fellsway.  Officer Quinn reported over the radio that the robbers were two white males, and

-2-

one wore a black baseball cap.  As she gave chase, she continued to give updates over the police radio as to the location of the robbers.

MPD Detective Michael Fahey was on duty at the Medford Police Headquarters at the time of the initial dispatches about the robbery and heard the radio report.  He was in plainclothes and displayed his official badge on his belt.  After he heard about the robbery, he drove an unmarked police car to the area of Riverside Avenue and the Fellsway to help in the chase, continuing to follow Officer Quinn's updates over the police radio.  Detective Fahey heard that the black car had crashed near the Osgood School on Fourth Street, a cross street, and the suspects escaped on foot. Detective Fahey drove to the Fellsway and turned onto St. James Road, parallel and next to Fourth Street.  Fahey parked his car, and got out to search on foot.

Fahey saw a white male (whom he later identified to the court as the defendant) emerge from a private yard on the north side of St. James Road -- i.e., from the direction of Fourth Street, where the getaway car was abandoned -- diagonally across from where Fahey was parked.  It was about 10:30 in the morning. The area was a predominantly white residential neighborhood.

Fahey testified that Burhoe "came out of the yard, and he was moving slowly towards the sidewalk, towards the road.  He was looking around side to side, ducking, crouching a little bit."

-3-

Burhoe "slow jog[ged], fast shuffle[d]" across St. James Road to the side of the road where Fahey was parked and went behind a garage next to Fahey's car. Fahey followed Burhoe behind the garage. Fahey saw Burhoe crouching in the private yard and looking out at the intersection of Riverside and the Fellsway, then filled with police sirens and other activity. Fahey testified that Burhoe "was sneaking along the side of the house, basically, like someone playing hide-and-seek." Fahey continued to follow Burhoe as Burhoe jumped off a short wall into the intersection of Riverside and Fellsway.

Fahey followed and also jumped off the wall. At this point Burhoe turned around and made eye contact with Fahey. Burhoe was wearing a light-colored shirt and sweat pants, and his clothing was a bit dirty. Burhoe looked "disheveled" and "very unshaven," and according to Fahey, like "someone who's been on a long cocaine binge." Fahey thought Burhoe appeared to be under the influence of alcohol or drugs. Fahey saw a large bulge across the front of Burhoe's sweat pants, like a small towel rolled up and tucked into the waist area. Fahey walked towards Burhoe, saying, "Come here. I want to talk to you." Burhoe walked backwards away from Fahey, holding his arms out, saying, "What do you want with me? What do you want with me?" Fahey closed in on Burhoe until they were face to face, when Burhoe "took a quick turn to the right to move away from [Fahey] and to run away from [Fahey]." Detective Fahey then

-4-

forced Burhoe to the ground, with his body on top of one of Burhoe's arms. Burhoe said, "You'll have no problem with me, Officer. You'll have no problem with me. You know me." Fahey asked, "Who are you?" Burhoe replied, "It's me, Jojo." Fahey, who did not personally know Burhoe but did know of his reputation for being involved in bank robberies, said, "Jojo Burhoe. I would shake your hand, but we are kind of tied up right now."

Other officers then arrived, and Burhoe was handcuffed. As Burhoe was being brought to his feet to be patted down, Fahey saw that one of Burhoe's pockets had some money and surgical gloves hanging out of it. Another officer reached into Burhoe's waist band and retrieved a white plastic shopping bag, which was filled with approximately $1,700 in cash. Burhoe was then taken to the police station and booked.

After Burhoe's arrest, FBI Special Agent Laurence Travaglia, who knew Burhoe, went to MPD headquarters. After having been advised of his rights under <u>Miranda</u> v. <u>Arizona</u>, 384 U.S. 436 (1966), Burhoe waived them and confessed to the robbery.[1]

## II.

After indictment for bank robbery in violation of 18 U.S.C. § 2113(a), Burhoe moved to suppress the physical evidence the police obtained at the time of his arrest (including the

---

[1]The factual circumstances surrounding the arrest of Burhoe's co-defendant, Lawrence Maguire, are discussed in <u>United States</u> v. <u>Maguire</u>, 359 F.3d 71 (1st Cir. 2004).

plastic bag, the cash, and other items) as well as his statements to the police afterwards. He primarily argued that his seizure by Detective Fahey was a warrantless arrest without probable cause and that he had not offered a knowing and intelligent waiver of his Miranda rights before making his post-arrest statements.

The district court held a two-day evidentiary hearing and oral argument on the motion to suppress, and denied the motion. The court ruled that Burhoe's statements were made after a knowing, intelligent and voluntary waiver of his Miranda rights. Burhoe does not challenge this aspect on appeal. The district court also found that at the time Detective Fahey "took hold of Burhoe and forced him to the ground," that constituted an arrest of Burhoe (as opposed to an investigatory stop under Terry v. Ohio, 392 U.S. 1 (1968), which the government had argued in the alternative). Given the totality of the circumstances and the knowledge Fahey had at the time concerning the robbery, the district court found the arrest was justified by probable cause.

After the denial of his motion to suppress, Burhoe entered a conditional guilty plea to the indictment, reserving the right to appeal the denial of the motion to suppress.

In Burhoe's Presentence Report (PSR), his base offense level was computed to be 32 based on his career offender status and the 20-year statutory maximum term of imprisonment for bank robbery. See U.S.S.G. § 4B1.1; 18 U.S.C. § 2113(a). After a

three-level reduction for acceptance of responsibility, Burhoe's total offense level was 29. That, combined with his criminal history category of VI, gave him a Guidelines range of 151 to 188 months' imprisonment. U.S.S.G. Ch. 5 Pt. A.

Burhoe moved the court to depart downwards to a sentence of 84 months, arguing that he suffered from a diminished mental capacity at the time of the bank robbery. See U.S.S.G. § 5K2.13. Burhoe presented psychological reports that he suffered from "post-traumatic stress disorder and major depressive disorder, . . . with an overlay of polysubstance abuse." The sentencing court explained that under its reading of U.S.S.G. § 5K2.13, a defendant cannot have the benefit of the departure if a disqualifying factor such as a crime of violence is present. See U.S.S.G. § 5K2.13.[2] The

_____

[2]Section 5K2.13 provides:

> A sentence below the applicable guideline range may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.
>
> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense

-7-

sentencing court denied the downward departure on the ground that Burhoe's offense of conviction "involved actual violence or serious threat of violence and indicates a need to protect the public." The court then sentenced Burhoe at the bottom of the Guidelines range to 151 months' imprisonment and 3 years of supervised release, and ordered him to pay $20,023.68 in restitution.[3]

Burhoe timely appealed to this court.

**III.**

Denial of the Motion to Suppress

We review de novo the district court's probable cause determination; subsidiary factual findings are reviewed for clear error, "giv[ing] due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996); see also United States v.

---

involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

U.S.S.G. § 5K2.13 (2003 ed.). Section 5K2.13 was amended slightly in November of 2004, after the sentencing hearing in this case, without significant change in meaning.

[3]The defendant also argued that a departure is justified under U.S.S.G. § 5H1.3 because Burhoe "committed this offense while suffering from extremely deleterious mental conditions." The sentencing court denied that ground as well, finding that Burhoe's case did not take it out of the heartland of § 5H1.3. Burhoe does not base his arguments on appeal on § 5H1.3.

-8-

Capelton, 350 F.3d 231, 240 (1st Cir. 2003). "Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997). Probable cause is also a "commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas, 517 U.S. at 695 (internal quotations marks and citations omitted).

Burhoe does not seriously challenge any of the district court's factual findings, only the conclusion drawn. Burhoe's argument is that there was nothing suspicious about where he was or how he was behaving. We disagree. There was ample evidence of probable cause for his arrest.

When Detective Fahey saw Burhoe on St. James Road, he knew: (1) a bank robbery had just taken place minutes earlier by two white males; (2) the suspects' getaway car had been abandoned on Fourth Street, the next street north of St. James Road; (3) the suspects were escaping on foot in the immediate vicinity; (4) Burhoe, a white male, emerged from a private yard, consistent with the route of a fugitive escaping from the abandoned car on Fourth Street one block to the north; (5) Burhoe did not look like he belonged there -- at 10:30 on a workday morning, Burhoe was

-9-

disheveled, dirty, and possibly intoxicated, not the usual sight in a residential neighborhood; (6) Burhoe behaved strangely: his furtive, "hide-and-seek" movements, quick dash across the road, and his attempt to remain hidden; (7) Fahey noticed an abnormal bulge in Burhoe's waist; and (8) to boot, Burhoe attempted to run away from Fahey. A "reasonably prudent person would believe [Burhoe] had committed or was committing a crime." Young, 105 F.3d at 6.

Burhoe cites United States v. Kithcart, 134 F.3d 529 (3d Cir. 1998), for his argument that there was no probable cause at the time of his arrest. This comparison is unavailing. Kithcart concluded that the arresting officer had no probable cause to make an arrest under very different circumstances: the make and model of the defendants' car did not match the radio reports of robberies from earlier in the night; there was no indication that the last reported robbery occurred near where the arrest took place because the robbery was in an unspecified location in a neighboring town; and the number of suspects in the radio reports of the robberies (two black males in one car) did not match the arresting officer's initial observation of the defendant (a single black male in one car). 134 F.3d at 531-32. These facts are easily distinguished from the present case.

**IV.**

Burhoe also brings a challenge to his sentence under United States v. Booker, 125 S. Ct. 738 (2005). Burhoe concedes

-10-

that he did not preserve the error below, and we review his claim of <u>Booker</u> error under the plain error standard.  <u>United States</u> v. <u>Antonakopoulos</u>, 399 F.3d 68, 75 (1st Cir. 2005).

Because Burhoe did not preserve his objection, he must show a reasonable probability of a more lenient sentence under advisory Guidelines.  <u>See</u> <u>id.</u> at 75.  Burhoe relies on statements by the trial judge that the mandatory Guidelines scheme meant that the judge believed he could not grant the downward departure Burhoe sought.  During sentencing, the following exchange took place between counsel for the defendant and the sentencing court:

> Defendant counsel: My recommendation was for a departure down to a sentence not to exceed 84 months.  That's a seven-year sentence.
>
> The court: I think I understand your position . . . and your position is one I started with yesterday, that a sentence less than what the guidelines call for here can be imposed even with a departure.  But I -- I   reviewed [U.S.S.G. § 5K2.13], the language, the plain language of the guideline, and it says to me that you just don't get the departure if you have these disqualifying factors, like a criminal history, suggest the need to protect the public if the offense of conviction is a crime of violence involving an actual crime of violence or a serious threat of violence, you don't get this departure.
>     In other words, <u>I don't believe the</u> <u>language of the guidelines permit me to tailor</u> <u>this</u> -- in other words, we compared this yesterday with contributory to comparative negligence.  In the old days when there was contributory negligence, one bit of evidence prevents you from getting -- now I read this guideline that way.
>         . . .

-11-

> I read it that you don't get the departure if I find there's a need to protect the public.

(emphasis added). Given this exchange and others in the transcript similar in tenor, it is clear that the district court felt compelled by the language of the Guideline not to consider Burhoe for a downward departure. And there is some indication that absent this compulsion, it may have considered the question of departure differently. "[W]e are not inclined to be overly demanding as to proof of probability where, either in the existing record or by plausible proffer, there is reasonable indication that the district judge might well have reached a different result under advisory guidelines." United States v. Heldeman, 402 F.3d 220, 224 (1st Cir. 2005).[4]

The government's primary argument is that there is no possibility of a different outcome because "Burhoe's sentence was dictated by a congressional directive that career offenders receive a sentence at or near the statutory maximum." This argument is premised upon 28 U.S.C. § 994(h), which directs the Sentencing Commission to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for

---

[4]Burhoe also makes other arguments against his sentence such as an alleged unfairness due to the disparity between his sentence and that of his co-defendant (who Burhoe argues was not sentenced as a career offender). Since we are remanding based on the district court's statements during the sentencing hearing, we do not need to address these other arguments.

categories of defendants" including career offenders like Burhoe. 28 U.S.C. § 994(h). We have consistently refused to speculate on what the district court will do, if anything, on remand. Of course we intimate no view either as to the merits of the government's statutory arguments or to whether the court should visit a new sentence upon Burhoe. See United States v. Bourgeois, No. 04-2203, 2005 U.S. App. LEXIS 6599, at *5 (1st Cir. Apr. 18, 2005); United States v. Mercado Irizarry, No. 02-1105, 2005 U.S. App. LEXIS 5892, at *14 (1st Cir. Apr. 11, 2005).

## V.

We **affirm** the district court's denial of Burhoe's motion to suppress and **remand** under Booker for resentencing consistent with this opinion. **So ordered**.

-13-