# United States Court of Appeals
## For the First Circuit

No. 17-1367

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ CENTENO-GONZÁLEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Chief Judge,
and Thompson, Circuit Judge.*

Linda Backiel for appellant.
Alexander L. Alum, Assistant United States Attorney, with
whom Rosa Emilia Rodríguez-Velez, United States Attorney, Marian
E. Bauzá-Almonte, Assistant United States Attorney and Chief,
Appellate Division, and Thomas F. Klumper, Assistant United States
Attorney, were on brief for appellee.

---

* Judge Torruella heard oral argument in this matter and
participated in the semble, but he did not participate in the
issuance of the panel's decision.  The remaining two panelists
therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

February 24, 2021

**HOWARD, Chief Judge**. Although it takes many turns along the way, this case starts and ends with the firearm that was found inside a hidden compartment of a vehicle on May 6, 2015. On that day, law enforcement officers pulled over Jose Centeno-González as he drove by in a Toyota Tundra that the officers believed matched the description of a vehicle that had just been involved in a shooting. After arresting Centeno, the officers deployed a firearm-detecting dog to inspect the outside of the vehicle and used the results of the dog sniff to obtain a search warrant for the vehicle. While searching the vehicle, officers found a firearm, gloves, and paperwork inside a concealed compartment in the dashboard. Following trial, a jury convicted Centeno of unlawful possession of a firearm. Now on appeal, Centeno contends that the district court erred by refusing to suppress the evidence seized from his vehicle pursuant to the warrant. He also contends that the district court erred in multiple evidentiary decisions during his trial and that these errors infringed his right to present a complete defense. After careful consideration, we conclude that the district court did not err and affirm the conviction.

## I.   FACTS

Because Centeno challenges his conviction on various grounds, we will "provide a more or less neutral summary of the key relevant evidence presented at trial." See United States v.

- 3 -

Flores-Rivera, 787 F.3d 1, 9 (1st Cir. 2015). According to the testimony at trial, in the early evening hours of May 6, 2015, a dispatch officer at the municipal police department in Juncos, Puerto Rico issued a radio call alerting officers that there had just been gunfire at Tite Curet Street in Urbanization Estancias de la Ceiba ("UEC"). More specifically, the dispatch officer stated that she had received two separate civilian calls reporting the shooting and had heard detonations over the phone. The dispatch officer also communicated that a white Toyota Tundra truck with tinted windows had transferred weapons to a grey vehicle, had run over a person, and was now headed toward Road 198 and Las Piedras.

Officers Nilka Figueroa-Negron ("Figueroa") and Luis Rosa-Gonzalez ("Rosa"), who worked for the municipal police department, heard the radio transmission. In response, Figueroa and Rosa drove down Road 198 in the direction of UEC. As they were driving down Road 198, Figueroa and Rosa spotted a white Toyota Tundra with tinted windows heading towards them. Believing that this car matched the description provided in the radio call, Officer Rosa turned the police patrol car around with the intention of stopping the Toyota Tundra.

Officer Rosa turned on the lights and siren while Officer Figueroa used the loudspeaker to order the driver, who was Centeno, of the Tundra to pull over. The Tundra stopped about six seconds

later. Officers Figueroa and Rosa stepped out of their police vehicle and, with their weapons drawn, approached the Tundra. By this point, two Puerto Rico Police Department ("PRPD") officers, who had also received a radio transmission reporting gunfire at UEC, had reached the scene. The PRPD officers ordered Centeno, who was alone in the vehicle, to turn off the engine and lower the window. Centeno lowered his window halfway and, approximately a minute later, stepped out of the Tundra. The officers noted that Centeno looked nervous and asked him where he was coming from; in response, Centeno stated that he was coming from UEC, where he was looking for a house to rent. The officers then placed Centeno on the ground, and Officer Rosa handcuffed him. The parties both agree that at this point, the stop had ripened into an arrest. See United States v. Centeno-Gonzalez, 177 F. Supp. 3d 721, 729 n.5 (D.P.R. 2016).

Once Centeno had been secured, Officers Figueroa and Rosa left to investigate the crime scene at UEC.[1] Meanwhile, the PRPD police officers remained with Centeno at the scene of his

---

[1] During the suppression hearing, Officers Figueroa and Rosa testified that, once they reached Tite Curet Street in UEC, they were directed to the residence where the shooting took place. Inside the residence, they found a man with several gunshot wounds who was non-responsive. They did not find any evidence that someone had been run over. Once the crime scene had been secured and reinforcements had arrived, Officer Rosa returned to the location where the Centeno had been pulled over and detained. Centeno was not charged federally in connection with the homicide.

stop. Centeno watched as another officer arrived with a dog that was trained in detecting firearms. While circling and sniffing the exterior of the Toyota Tundra under the guidance of an officer, the dog sat down, according to protocol and training, that indicated that the dog had detected the scent of a firearm. The Toyota Tundra was then sealed and towed, and Centeno was taken to a detention center for processing.

The next day, officers obtained a warrant to search the interior of the Toyota Tundra. While searching the vehicle, officers found a hidden compartment in the dashboard near the radio. Inside the compartment, officers found a firearm, magazines for the weapon, a black glove, and two Ziploc bags with a cream-colored substance, among other things. Subsequent testing indicated that the cream-colored substance contained cocaine. DNA samples collected from the firearm and the glove were tested and found to be consistent with Centeno's DNA.

## II. PROCEDURAL HISTORY

On August 6, 2015, Centeno was indicted for possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §841; possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A)(i); and, possession of a firearm by a convicted felon, in violation of 18 U.S.C. §922(g)(1). In advance of trial, Centeno moved to suppress all physical evidence seized from the vehicle and any

statements attributed to him after the stop because they constituted the fruits of an unlawful arrest. He also contended that the affidavit submitted in support of the warrant to search his car contained false information and requested an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978). Because the motion did not make a substantial preliminary showing that the statements made in support of the warrant application were knowingly or recklessly false, the district court denied Centeno's request for a Franks hearing. United States v. Centeno-Gonzalez, No. 15-346 (FAB), 2015 WL 13729918 at *3 (D.P.R. Dec. 31, 2015).

A hearing was held, however, before a magistrate judge on the question of the validity of Centeno's arrest. Id. at *1-3. In its report and recommendations, the magistrate judge reasoned that Centeno's arrest was unlawful and recommended the suppression of "all tangible evidence gained following the unlawful arrest." Id. at *17. The government timely objected. Upon review, the district court denied the motion to suppress in full, and the evidence obtained from the search was admitted at trial.

During trial, the government also introduced a stipulation and officer testimony regarding Centeno's prior firearm conviction, including evidence that his prior conviction was based on evidence that a firearm had been recovered from a hidden compartment in the dashboard of Centeno's car. For his

- 7 -

part, Centeno called a witness who testified that the Toyota Tundra was registered to her and had been purchased by her brother, who had a prior drug conviction. Ultimately, the jury found Centeno guilty of being a felon in possession of a firearm but could not reach a unanimous verdict with respect to the drug possession charge and the firearm possession in furtherance of drug trafficking charge.

Centeno timely appealed.

## III. THE MOTION TO SUPPRESS

In his primary challenge, Centeno contends that the district court erred in denying his motion to suppress the evidence found in the Toyota Tundra after law enforcement officers arrested him, used a firearm-detecting dog to inspect the exterior of the vehicle, and obtained a warrant to search the interior. Centeno challenges the validity of each of these actions.[2]

When evaluating a motion to suppress, we review de novo all legal conclusions, "including the district court's probable cause and reasonable suspicion determinations, as well as its ultimate decision to grant or deny the motion to suppress." United States v. Tiru-Plaza, 766 F.3d 111, 115 (1st Cir. 2014) (citing,

---

[2] The government argues that Centeno has waived any challenge to the admission of evidence seized from the vehicle because he did not object when that evidence was offered at trial. Centeno fully litigated his motion to suppress and renewed this motion during the trial. And on this record we see no basis for waiver.

among other authority, United States v. Crespo-Ríos, 645 F.3d 37, 41 (1st Cir. 2011)).  The district court's factual determinations are reviewed for clear error.  Id. at 114-15.  Throughout, we "give appropriate weight to the inferences drawn by the district court and the on-scene officers, recognizing that they possess the advantage of immediacy and familiarity with the witnesses and events."  Id. at 115.  Consequently, we "will affirm the district court's decision if any reasonable view of the evidence supports it."  United States v. McFarlane, 491 F.3d 53, 56 (1st Cir. 2007).

## A.    The Arrest

Centeno argues first that the district court improperly concluded that his arrest was supported by probable cause and, therefore, was lawful.  According to Centeno, the district court relied on only the Toyota Tundra's proximity to the events and a "generic" vehicle description while disregarding factors that cut against probable cause.  Under the weight of both the record below and the pertinent case law, this argument crumbles.

As a preliminary matter, Centeno does not argue that it would have been unreasonable for law enforcement officers to stop his car and ask him a few questions.  Indeed, the magistrate judge found, and Centeno did not dispute, that the radio transmissions, combined with the officers' observation that Centeno's car seemed to match the description given to the dispatch officer, was enough to provide reasonable suspicion to pull the car over and briefly

detain it.  Centeno-Gonzalez, 2015 WL 13729918 at *5 (applying the standard set in Terry v. Ohio, 392 U.S. 1 (1968); see also Navarette v. California, 572 U.S. 393, 397-98 (2014) (holding that an anonymous tip may, in some circumstances, provide officers with reasonable suspicion to briefly stop and question a driver).

Instead, Centeno argues, even if the officers had reasonable suspicion to stop him, the stop did not produce any evidence that would have given the officers probable cause to arrest him.  See McFarlane, 491 F.3d at 56 ("An arrest does not contravene the Fourth Amendment's prohibition on unreasonable seizures so long as the arrest is supported by probable cause."). As we have explained, probable cause exists where "police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect committed or was committing a crime." United States v. Burhoe, 409 F.3d 5, 10 (1st Cir. 2005).  It does not require law enforcement officers to have "an ironclad case . . . on the proverbial silver platter." United States v. Diallo, 29 F.3d 23, 26 (1st Cir. 1994) (internal citations omitted).  Instead, "[i]t suffices if . . . a prudent law enforcement officer would reasonably conclude that the likelihood existed that criminal activities were afoot, and that a particular suspect was probably engaged in them." Id. (quoting United States v. Chapdelaine, 616 F. Supp. 522, 526 (D.R.I. 1985), aff'd 795 F.2d 75(1st Cir. 1986));

see also Wong Sun v. United States, 371 U.S. 471, 479 (1963) (holding that probable cause requires only a determination that there is "evidence which would warrant a man of reasonable caution in the belief that a felony has been committed").  Consequently, probable cause is not a creature of certainty and does not require either the level of proof needed to secure a conviction or even an "unusually high degree of assurance." United States v. Clark, 685 F.3d 72, 76 (1st Cir. 2012); see also Maryland v. Pringle, 540 U.S. 366, 371 (2003) (explaining that probable cause "deals with probabilities and depends on the totality of the circumstances").

Here, the district court determined -- and neither party disputes -- that the moment of arrest was when Centeno exited the Toyota Tundra and was lowered to the ground and handcuffed.  At that point, the officers had in their arsenal several important pieces of information: 1) two separate civilian calls had provided the dispatch officer with similar details regarding an active shooting; 2) the dispatcher herself had overhead gunfire while on the phone with those callers; 3) the officers observed Centeno driving a vehicle that matched the description provided in the phone calls while traveling away from UEC; 4) the officers spotted Centeno close in time and place to the shooting; and, 5) when asked, Centeno told officers that he had just left the exact area of the shooting.

Taken together, this evidence provided the district court with an adequate basis to conclude that officers had probable cause to arrest Centeno. For starters, the officers had reason to believe that criminal activity had occurred at UEC. The first caller described seeing a man in a white Toyota Tundra with tinted windows deliver firearms to a grey vehicle. That caller also stated that she watched as two individuals from the grey vehicle proceeded to shoot someone. No intellectual gymnastics are needed to reach the conclusion that the officers' reliance on this information was reasonable given the totality of the circumstances, including the fact that the caller provided the information contemporaneously. See Navarette, 572 U.S. at 399 (stating that the contemporaneous nature of a phone call reporting criminal activity was a factor supporting the conclusion that an anonymous tip was reliable).

Other pieces of information also connected Centeno to the reported criminal activity. First, the vehicle that Centeno was driving matched the multi-factored description that the officers had been given. Both callers reported that a white Toyota Tundra had been involved with the exchange of firearms. The first caller added that the Toyota Tundra had tinted windows and its occupant was a man. The second caller reported that the Tundra was headed toward Juncos. Where the vehicle description includes the vehicle's make, model, color, and window condition; the gender

of the vehicle's occupant; and the direction and route in which the vehicle was traveling, the description can hardly be described as "generic."  In addition, Centeno's geographic and temporal proximity to the crime scene further connected him to the criminal activity.  The officers spotted Centeno only two to four minutes after receiving the radio call reporting the shooting, and Centeno himself confirmed that he was coming from the area where the crime took place.  To be sure, the officers never saw Centeno commit a crime; the conduct they observed was entirely innocent but was enough to corroborate the information provided by the two callers. See Illinois v. Gates, 462 U.S. 213, 241-42 (1983) (holding that, when making a warrantless arrest, officers "may rely upon information received through an informant . . . so long as the informant's statement is reasonably corroborated (internal quotations and citation omitted))"; McFarlane, 491 F.3d at 57 ("A statement from a source can constitute the basis for probable cause . . . so long as there is a sufficient basis for crediting the source's reliability.").

Moreover, while any one of these factors likely would not have been enough on its own to establish probable cause, it is their cumulative impact with which we are concerned.  See McFarlane, 491 F.3d at 56 (recognizing that courts resolving challenges to probable cause "should evaluate the totality of the circumstances" (citing United States v. Jones, 432 F.3d 34, 41

(1st Cir. 2005))).  For this reason, Centeno's argument, which turns on excessively slicing and dicing the information that was before the officers, falls flat.  The crucial question for us is not whether every single, conceivable factor before the officers gestured at the defendant's criminality; instead, the question is whether the factors that meaningfully linked the defendant with the criminal activity, when taken together, are sufficiently specific and compelling to establish probable cause.  We conclude, on the record before us, that the factors that linked Centeno to the reported shooting in UEC were sufficient to support a finding of probable cause.  See, e.g., United States v. Dion, 859 F.3d 114, 132-33 (1st Cir. 2017) (rejecting defendant's argument that "certain other facts deserved more weight than they received from the district court['s]" probable cause determination and declaring that "evidence in the record supports the district court's findings, and that is that").

We also note that Centeno's contentions that there was no physical record of any phone calls describing a white Toyota Tundra (though there was suppression-motion testimony on that point) and that there was no hit-and-run do not defeat a finding of probable cause.  In determining probable cause, we consider only the information available to the officers at the time of the arrest.  See Diallo, 29 F.3d at 25.  Even if the officers made a mistake of fact, an arrest will still be justified if the mistake

was "objectively reasonable" at the time.  United States v. Coplin, 463 F.3d 96, 101 (1st Cir. 2006); see also United States v. Ruidiaz, 529 F.3d 25, 29 (1st Cir. 2008).  Here, at the time of the arrest, the officers had no reason to believe that the information they received from the dispatch officer was false or misleading.  They certainly had no reason to believe, as Centeno contended at trial, that the dispatch officer never actually received any phone calls reporting the crime or that the phone calls never actually described the vehicle involved.

Considering the totality of the circumstances, then, we find no error in the district court's determination that Centeno's arrest was supported by probable cause.

**B.  The Dog Sniff**

Centeno also argues that the officers' use of a firearm-detecting dog to inspect the outside of the Toyota Tundra after his arrest constituted an unlawful search that violated the Fourth Amendment.  Because we have already concluded that his arrest was lawful, we need not address his first contention -- that the dog sniff was tainted by an unlawful arrest.  We focus instead on his second contention -- that the dog sniff constituted an unreasonable search.

As a threshold matter, Centeno's Fourth Amendment challenges to law enforcement actions that were directed at the Toyota Tundra require a threshold finding.  There can only be a

Fourth Amendment violation where the complainant had an expectation of privacy in the item that was searched. See Rakas v. Illinois, 439 U.S. 128, 133-34 (1978); see also United States v. Almeida, 748 F.3d 41, 47 (1st Cir. 2014) (discussing the factors courts look at to determine "whether a person has a reasonable expectation of privacy in a vehicle," and therefore, has standing to challenge the admission of evidence found in that vehicle). The government here argued before both the district court and this court that Centeno lacked a reasonable expectation of privacy in the vehicle and therefore could not object to the introduction of evidence found in the vehicle. However, it did not present this argument to the magistrate judge, meaning there were no findings of fact on this question. Consequently, the district court concluded that, since Centeno's motion to suppress failed on the merits, it would assume without deciding that he had standing to bring such a motion. Centeno, 177 F. Supp. 3d at 727-28. Because we affirm the district court's ruling on the merits, we will follow its lead and assume, without deciding, that Centeno has a reasonable expectation of privacy in the vehicle.

The question of whether a firearm-detecting dog's sniff of the exterior of a vehicle amounted to a search under the Fourth Amendment is a matter of first impression in this circuit. However, because we conclude that the dog sniff was reasonable and was supported by probable cause, we need not resolve this question.

See United States v. Mayendia-Blanco, 905 F.3d 26, 37 (1st Cir. 2018) (noting that "[t]he simplest way to decide a case is often the best" (quoting Stor/Gard, Inc. v. Strathmore Ins. Co., 717 F.3d 242, 248 (1st Cir. 2013))).

When the dog sniff took place, the officers not only had probable cause to believe that Centeno was involved in criminal activity at UEC, they also had confirmation from Officer Rosa that someone had been shot and killed at UEC. As a result, the same factors that gave the officers probable cause to arrest Centeno also gave the officers probable cause to inspect the vehicle. And, the manner in which the officers inspected the vehicle was reasonable given the circumstances; as the Supreme Court has observed, a canine sniff is "limited  both in the manner in which the information is obtained and in the content of the information revealed." United States v. Place, 462 U.S. 696, 702 (1983). Any invasion of privacy, then, is minimal. Furthermore, because he is "[t]he driver of a car on a public highway[,] [Centeno] is considered to have a diminished expectation of privacy with regard to his vehicle." United States v. Rodriguez-Morales, 929 F.2d 780, 788 (1st Cir. 1991); see also Arizona v. Gant, 556 U.S. 332, 343 (2009) ("[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." (internal quotations and citation omitted)).

We therefore conclude that the dog sniff was reasonable.

**C.   The Search Warrant**

Centeno also raises two distinct challenges to the warrant that the officers obtained to search the interior of the vehicle.  We discuss each challenge in turn.

**1.   Probable Cause**

First, Centeno contends that the affidavit underlying the search warrant failed to establish probable cause because 1) it stated that "objects" were transferred between the vehicles, instead of specifically identifying those objects as guns; 2) it failed to specify what the dog detected; and 3) it failed to reveal whether the dog was adequately trained or certified.  Because Centeno did not argue, or even mention, the question of the dog's training and certification in his original motion to suppress, this argument is waived.  United States v. Crooker, 688 F.3d 1, 10 (1st Cir. 2012).  Though the other two arguments were only hinted at in the district court, we will nevertheless consider and reject them on their merits.

To survive appellate review, a "warrant application must demonstrate probable cause to believe that (1) a particular person has committed a crime (the 'commission' element), and (2) enumerated evidence of the offense will be found at the place to be searched (the 'nexus' element)." United States v. Beckett, 321 F.3d 26, 31 (1st Cir. 2003) (citing United States v. Zayas

<u>Diaz</u>, 95 F.3d 105, 110-11 (1st Cir. 1996)).  We evaluate the affidavit "in a practical, common-sense fashion and accord considerable deference to reasonable inferences the [issuing judicial officer] may have drawn from the attested facts."  <u>Id.</u> (quoting <u>United States</u> v. <u>Barnard</u>, 299 F.3d 90, 93 (1st Cir. 2002) (alterations in original).  In light of the "great deference" that is owed, we reverse a magistrate's decision to issue a search warrant "only if there is no substantial basis for concluding that probable cause existed."  <u>United States</u> v. <u>Procopio</u>, 88 F.3d 21, 25 (1st Cir. 1996) (quoting <u>Gates</u>, 462 U.S. at 238-39) (cleaned up).

This standard is fatal to Centeno's challenge, which essentially boils down to his discomfort with the fact that the word "guns" was not expressly used in the affidavit.  The problem for Centeno, however, is the language that <u>was</u> employed in the affidavit reasonably supported the inference that the object that was transferred at the scene of the crime, and the object that the dog detected in the car, was a firearm.  The affidavit indicates that an officer spoke with an anonymous caller who reported that a white Toyota Tundra transferred "objects" to a grey Hyundai and that, shortly after that transfer, detonations were heard.  That scenario -- particularly the presence of detonations -- permitted a reasonable inference that the "objects" passed were the guns that created the detonations.  The affidavit goes on to indicate

that a Tundra was then stopped close in place and time to the detonations. The affidavit also specifically identifies Centeno as the driver of the Tundra and indicates that, when stopped, Centeno told officers that they could not search the Tundra without a judicial order. The affidavit states that a law enforcement dog then "inspect[ed] the vehicle going around the same" and "mark[ed] the lateral doors."

Considering the totality of the information in the affidavit, we see nothing improper in the issuing judge having drawn an inference that the item that the dog detected was a gun. Nor do we see anything improper in the issuing judge's conclusion that the affidavit establishes sufficient probable cause to authorize a search of the vehicle.

Moreover, in issuing the affidavit, the judge specifically stated that officers were authorized to search the vehicle "for weapons and any other violations of the law." In light of this statement, then, it seems clear that a reasonable officer would have understood that the warrant was valid. See, e.g., Stanford v. Texas, 379 U.S. 476, 485 (1965) (holding that, to be valid, a warrant must be supported by probable cause and must "particularly describe the things to be seized." (quoting Marron v. United States, 275 U.S. 192, 196 (1927))). Even if the warrant was deficient, it was not so facially invalid as to require

suppression of the evidence discovered pursuant to its terms.[3] United States v. Leon, 468 U.S. 897, 923 (1984).

### 2. The Claim of False Information

Centeno maintains, as he did below, that the search warrant was granted in reliance on false information in violation of Franks v. Delaware, 438 U.S. 154, 155-56 (1978). According to Centeno, the hit-and-run that is mentioned in the search warrant affidavit never occurred, and the content from the anonymous phone calls was greatly misrepresented. The magistrate judge denied Centeno's request for a Franks hearing on two grounds: first, because Centeno's complaints were "essentially a discovery issue"; and second, because Centeno failed to provide an affidavit in support of his request, as is required. Centeno, 2015 WL 13729918 at *3. The district court, in turn, stated that it was adopting the magistrate's legal conclusion that "Centeno failed to meet his burden of making a substantial preliminary showing to entitle him

---

[3] We note that it is not entirely clear on this record that law enforcement officers needed a warrant to search the car both because there was a reasonable possibility that it contained evidence related to the shooting, see generally Arizona v. Gant, 556 U.S. 332 (2009), and because it was lawfully impounded after Centeno's arrest. See generally United States v. Davis, 909 F.3d 9 (1st Cir. 2018); United States v. Coccia, 446 F.3d 233 (1st Cir. 2006). Since the government has not sought to justify the search on either basis, however, we will assume that a warrant was required to search the car, and affirm on the basis that the warrant at issue was valid.

to a _Franks_ hearing." We conclude that the record presents no legitimate basis for upsetting this determination.

In _Franks_, the Supreme Court carved out an important avenue for defendants to challenge the veracity of the representations supporting an application for a search warrant. 438 U.S. at 155-56. To be entitled to an evidentiary hearing under _Franks_, a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit[.]" United States v. _Graf_, 784 F.3d 1, 3 (1st Cir. 2015) (quoting _Franks_, 438 U.S. at 155-56). In addition, for the defendant to be entitled to relief, "the allegedly false statement [must be] necessary to the finding of probable cause." _Id._ (quoting _Franks_, 438 U.S. at 155-56). On appeal, this court "reviews the denial of a _Franks_ hearing for clear error." United States v. _Reiner_, 500 F.3d 10, 14 (1st Cir. 2007). Clear error "exists only when we are 'left with the definite and firm conviction that a mistake has been committed.'" United States v. _Hicks_, 575 F.3d 130, 138 (1st Cir. 2009) (quoting United States v. _Castillo_, 287 F.3d 21, 25 (1st Cir. 2002)).

We find no clear error here. We have made abundantly clear that, because "[a]n application 'supporting a . . . warrant is presumptively valid,'" it is incumbent on the defendant to show that he is entitled to a _Franks_ hearing. United States v. _Barbosa_,

896 F.3d 60, 67 (1st Cir. 2018) (quoting United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013)). The Supreme Court itself stated that "allegations of deliberate falsehood or of reckless disregard for the truth . . . must be accompanied by an offer of proof." Franks, 438 U.S. 154 at 171. "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." Id. Without explanation, Centeno failed to provide any evidence or even an affidavit in support of his request for a Franks hearing. Even after the magistrate judge expressly pointed to the lack of an affidavit in denying Centeno's request, Centeno made no attempt to correct the inadequacy. His offer at trial of expert testimony regarding the anonymous phone calls is not enough to make up for this deficiency. In these circumstances, the decision to deny the hearing does not rise to the level of clear error.

As to Centeno's contention that the failure to adequately request a Franks hearing constituted ineffective assistance of counsel, usually such claims "should be ventilated in the trial court in the first instance." United States v. Wyatt, 561 F.3d 49, 52 (1st Cir. 2009). And we see no reason not to apply the usual rule here. We pass no judgment on the merits of the ineffective assistance of counsel claim; instead, the claim is remitted to a petition for collateral relief pursuant to 28 U.S.C. § 2255, assuming Centeno chooses to file one.

## IV. EVIDENTIARY ISSUES AT TRIAL

Centeno also argues that he is entitled to a new trial because of a series of evidentiary rulings that he contends were erroneous and that had the cumulative effect of depriving him of a meaningful opportunity to present a complete defense. With a cumulative error challenge, "[w]e review the rulings for abuse of discretion before deciding what cumulative effect any errors may have had." United States v. Perez-Montanez, 202 F.3d 434, 439 (1st Cir. 2000) (citing United States v. Cardales, 168 F.3d 548, 557 (1st Cir. 1999)). In doing so, we "must consider each such claim against the background of the case as a whole, paying particular weight to factors such as the nature and number of the errors committed; their interrelationship, if any . . . ; and the strength of the government's case." United States v. Sepulveda, 15 F.3d 1161, 1196 (1st Cir. 1993). Applying this standard to Centeno's trial, we find no cumulative error. We outline our pathway to this conclusion.

### A. Evidence Regarding Centeno's Prior Arrest

Over the defense's objection, the district court permitted the government to introduce testimony from a PRPD police officer that, in June 2011, Centeno was arrested after he was observed placing a firearm in a homemade, hidden compartment in the dashboard of a vehicle. When officers searched that compartment, they found Centeno's license along with pistol

magazines.  Centeno now argues that the admission of this prior bad act evidence constituted error.  While we continue to require district courts to carefully evaluate prior bad act evidence under Federal Rules of Evidence 404(b) and 403 before admitting it, it is apparent to us that, in this case, the district court did not err in admitting the officer's testimony with respect to Centeno's prior arrest.

To admit prior bad act evidence, a trial judge must first determine that the proffered evidence has "a special relevance, i.e., a non-propensity relevance," such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  United States v. Henry, 848 F.3d 1, 8 (1st Cir. 2017) (internal quotations and citations omitted).  Even then, the evidence is only admissible if its probative value is not substantially outweighed by unfair prejudice under Rule 403.  Id.

The government represented to the district court that the testimony regarding Centeno's prior arrest was intended to show that Centeno engaged in a specific pattern of storing firearms in hidden vehicle compartments and, therefore, would have likely been aware that there was a firearm hidden in the Toyota Tundra.  Further, Centeno's knowledge and lack of mistake were directly at issue here; during trial, Centeno focused his defense on his contention that he did know there was a hidden compartment that

contained firearms and that someone else had hidden the firearms in the vehicle. Thus, the requirements of Rule 404(b) are satisfied; evidence relating to Centeno's prior conviction went directly to the question of his knowledge or lack of mistake rather than to his propensity toward criminal activity.

However, even when initially consistent with Rule 404(b), prior bad act evidence may become troublesome if the evidence itself is unfairly prejudicial or if it is admitted in excess or misused by the government over the course of the trial. The evidence here, however, was not presented in a way that posed a risk that it would "lure the factfinder into declaring guilt on a ground different from the proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997). Evidence of Centeno's prior arrest was offered to the jury in the form of (relatively brief) testimony from a single witness, who was subject to cross-examination. And, defense counsel was given the opportunity to argue that the prior arrest was not, in fact, probative of Centeno's knowledge in this case. Nor did the government misuse evidence of Centeno's prior arrest. The government's closing illustrates that it utilized the bad act evidence in tight keeping with the special relevance upon which it had been admitted:

> [T]he fact that this Defendant has used hidden
> compartments in the past goes to show that in
> this particular case, this wasn't a mistake.

- 26 -

> It wasn't an accident. He wasn't just merely in the wrong place at the wrong time. He clearly knows how to get access to hidden compartments, and he clearly knows what he wants to use them for. And what he wants to use them for or his intent is to conceal things that he is not supposed to have: [d]rugs, guns, bullets, a drug ledger.

Such restrained use of prior bad act evidence is consistent with our case law, especially when coupled with the court's limiting instruction. At the close of the evidence, the district court made clear to the jury that "[e]ven if you find that the Defendant may have committed similar acts in the past, this is not to be considered as evidence of character to support an inference that the Defendant committed the acts charged in this case." See United States v. Altvater, 954 F.3d 45, 55 (1st Cir. 2020) ("[W]e have a long-standing presumption that jurors follow instructions," and, as a consequence, any prejudice resulting from the admission of testimony related to the prior bad act may be ameliorated by proper jury instructions. (internal quotations and citation omitted)). Accordingly, there was no abuse of discretion in the admission of officer testimony regarding Centeno's 2011 arrest.

Centeno also argues that the district court's purported error in admitting this testimony was "compounded" by errors in the jury instruction regarding the testimony. But Centeno concedes that he did not object to the instruction during the trial and

that either error, in isolation, might not warrant reversal. Given these concessions, Centeno's challenge to the jury instruction sinks along with his argument that the admission of the testimony relating to his prior arrest was erroneous.

### B. Evidence Regarding Third Party's Prior Conviction

Next, Centeno argues that the district court erred by preventing him from introducing testimony that the previous owner of the Toyota Tundra, José Rondon-Bruno ("Rondon"), had several prior convictions for both controlled substances and firearms-related offenses. This evidence, he contends, was material to his argument that he did not know the Toyota Tundra had a concealed compartment that contained a firearm.

During trial, Centeno called as a witness the registered owner of the Toyota Tundra, Zoryant Rondon-Bruno ("Zoryant"). Zoryant testified that Rondon, her brother, was the one who primarily used the Toyota Tundra; Zoryant had simply helped with the purchase because Rondon did not have his documents up to date at the time of purchase. Zoryant also testified that Rondon was fatally shot a few months before Centeno's arrest in this case. Centeno attempted to elicit testimony from Zoryant regarding Rondon's criminal history. The government objected. In the end, the district court permitted Zoryant to testify that Rondon had been convicted of drug trafficking but did not allow Zoryant to

testify as to whether Rondon had been charged with possession of a firearm.

Centeno now argues that the district court's decision to prohibit Zoryant from testifying about Rondon's firearm conviction constituted an abuse of discretion. In Centeno's view, the exclusion of that testimony violated his right to present a complete defense. Centeno puts no dressing on this general assertion other than suggesting that there was a "reasonable possibility" that introduction of Rondon's firearm-related arrest would have created reasonable doubt.

While fundamental and robust, "a defendant's right to present relevant evidence in his own defense 'is not unlimited, but rather is subject to reasonable restrictions[,]'" including the Federal Rules of Evidence. United States v. Diaz, 670 F.3d 332, 346 (1st Cir. 2012) (quoting United States v. Scheffer, 523 U.S. 303, 308 (1998)); see also Taylor v. Illinois, 484 U.S. 400, 410 (1988). Even when evidence is proffered by the defense, a district court maintains "general discretion to exclude otherwise relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, . . . or by considerations of undue delay [or] waste of time.'" United States v. DeCologero, 530 F.3d 36, 60 (1st Cir. 2008) (quoting Fed. R. Evid. 403) (alterations in original).

When the government objected to a question by the defense regarding Rondon's firearm history, the district court heard extended argument from both sides at sidebar and repeatedly asked Centeno about the purpose of introducing Rondon's prior involvement with firearms. Despite this opportunity, Centeno offered no particularized argument as to the relevance of a prior firearms conviction, much less an argument as to Rule 403 balancing.

In these circumstances -- where the defendant has failed before the district court and before us to present a fully formed argument as to the admissibility, relevance, and import of the contested evidence -- we must conclude that the district court acted within its discretion in excluding the evidence. See, e.g., Old Chief, 519 U.S. at 183 n.7 (explaining that the defendant has the burden of demonstrating abuse of discretion on his appeal).

### C. Evidence Regarding Police Station Telephone Records

Finally, Centeno objects on appeal to the district court's denial of his request to introduce testimony and records from a custodian at a telephone company that serviced the Juncos police station. According to Centeno, the evidence would have shown that no civilian calls were received at the police station between 6:30 and 7:30 P.M. on the day of Centeno's arrest, which would, in turn, support his contention that the civilian calls that the dispatch officer reported receiving did not occur as

claimed and there was never a hit and run.  This argument fares no better than the last.

Trial judges have "discretion under Rule 403 to exclude . . . evidence if it would distract from the main issues of the case."  DeCologero, 530 F.3d at 60.  Moreover, "[t]he decision on whether a matter is collateral or material is within the district court's discretion."  Id.  (citing United States v. Marino, 277 F.3d 11, 24 (1st Cir. 2002)).

In excluding the telephone records, the district court explained that they "do[] not go to a matter of guilt or innocence, because there is nothing here in the case about the murder or whether someone was run over by the Tundra."  The district court stressed that this "case is only about a weapon and drugs inside a secret compartment."  It was well within the district court's discretion to decide that: 1) the core question in this trial was whether Centeno possessed the firearm and drugs found in the Toyota Tundra; and that 2) the phone records were too tangential to survive an objection under Rule 403.  All of the charges before the jury related to whether Centeno possessed the firearm and drugs found in the Toyota Tundra.  While the phone calls that initially triggered police involvement were important to the motion to suppress and could have been presented at that juncture, Centeno has presented no compelling argument that the calls or the dispatch officer's credibility were critical to the questions that remained

at trial.  Indeed, the dispatch officer did not testify during the trial, so there was no testimony of hers to impeach.  We cannot say on this record that the district court abused its discretion in excluding this evidence.  For the same reason, we cannot say that the district court's refusal to allow evidence of the phone records prevented Centeno from presenting a complete defense or spared the government's case from "the crucible of meaningful adversarial testing."  Crane v. Kentucky, 476 U.S. 683, 691 (1986) (internal quotations and citation omitted).

Because we do not find any error in the district court's individual evidentiary decisions, Centeno's cumulative error claim also fails.

## V.    CONCLUSION

For the foregoing reasons, we **affirm**.