# United States Court of Appeals
## For the First Circuit

No. 21-1141

UNITED STATES OF AMERICA,

Appellee,

v.

JORGE MARCELO CANALES-RAMOS,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]


Before

Lynch and Selya, Circuit Judges,
and McCafferty,[*] District Judge.


Hector Sueiro-Alvarez, with whom Eric Alexander Vos, Federal Public Defender, Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appeals Division, and Kevin E. Lerman, Research and Writing Specialist, were on brief, for appellant.
David C. Bornstein, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

---

[*] Of the District of New Hampshire, sitting by designation.

December 9, 2021

**SELYA**, **Circuit Judge**. Defendant-appellant Jorge Marcelo Canales-Ramos seeks compassionate release based on what he alleges to be "extraordinary and compelling" reasons pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018). The defendant contends that the district court abused its discretion when it denied his motion for such relief. After careful consideration, we affirm.

**I**

We briefly rehearse the relevant facts and travel of the case. In September of 2011, the defendant was arrested aboard a vessel — in waters off the coast of the U.S. Virgin Islands — and found to be in possession of 48.2 kilograms of cocaine. At the time, the defendant was serving a five-year term of supervised release imposed after his guilty plea to drug-related charges in the District of Puerto Rico (D.P.R.).

In the wake of the defendant's 2011 arrest, the D.P.R. court convened a revocation hearing. The defendant admitted that he had violated the conditions of his supervised release by leaving Puerto Rico without permission and by engaging in renewed criminal activity. On February 22, 2012, the district court imposed a thirty-month revocation sentence and ordered that sentence "to be served consecutively to any other term of imprisonment currently being served or to be imposed upon" the defendant.

- 3 -

By the time the revocation sentence was imposed, the defendant had pleaded guilty in the District of the Virgin Islands (D.V.I.) to drug-conspiracy and drug-possession charges. See 21 U.S.C. §§ 841(a)(1), 846. Even so, the D.V.I. court did not convene the disposition hearing until May 9, 2012. At that hearing, the D.V.I. court imposed a 168-month term of immurement on each of the two counts of conviction and ordered those sentences to run concurrently. These concurrent terms of immurement were later reduced to 135 months pursuant to 18 U.S.C. § 3582(c)(2) and Guideline Amendment 782, USSG App. C Supp., amend. 782.

Neither the D.V.I. sentence nor the D.V.I. judgment mentioned the D.P.R. revocation sentence. Administrative records show that, as of last October, the Bureau of Prisons (BOP) calculated a total aggregate incarcerative term — encompassing both the D.V.I. and D.P.R. sentences — of 165 months. That calculation reflected that the D.V.I. and D.P.R. sentences were run consecutively.

After unsuccessfully pursuing an administrative grievance with the BOP, the defendant filed a pro se motion in the D.P.R. case. That motion (filed in November of 2019) sought the appointment of counsel to bring a post-conviction challenge concerning the consecutive nature of his revocation sentence. The defendant predicated this initiative on our decision in United States v. Almonte-Reyes, 814 F.3d 24 (1st Cir. 2016) — a decision

- 4 -

that we discuss below. See infra Part III(B). Following the appointment of counsel, the defendant filed the instant motion for compassionate release, alleging extraordinary and compelling reasons, in November of 2020. See 18 U.S.C. § 3582(c)(1)(A)(i). This was not his first such motion: he had filed a similar motion in the D.V.I. case a few months earlier.

In both his D.V.I. and D.P.R. compassionate-release motions, the defendant alleged, among other things, that his pre-existing medical infirmities, along with the conditions of his confinement, posed a substantial risk of severe illness should he contract the COVID-19 virus. This risk, he alleged, constituted an "extraordinary and compelling" reason for a sentence reduction. Id. § 3582(c)(1)(A)(i). In particular, the defendant pointed to his hypertension, hyperlipidemia, liver disease, diabetes, and pancreatitis, together with the potentially elevated risk of illness from COVID-19 posed by his race (Black) and his ethnicity (Latino). His D.P.R. motion — but not his D.V.I. motion — recast the alleged Almonte-Reyes error as a further reason warranting compassionate release.

While these motions were pending, the defendant contracted COVID-19 in January of 2021. He advised the D.P.R. court of this fact, and the court extended the government's deadline to file a sur-reply. The government filed a sur-reply about a week later. On the same day, the D.P.R. court denied the

- 5 -

defendant's compassionate-release motion.  In its order, the court noted that it had reviewed certain pertinent materials, including the parties' briefs and the defendant's medical records.  It concluded in relevant part that the defendant "ha[d] not identified any extraordinary or compelling reason for reduction of his sentence."  It also reiterated that no error had been committed in the imposition of the defendant's "sentences to run concurrently but consecutively to his sentence on revocation."

This timely appeal ensued.  The defendant's counterpart D.V.I. motion for compassionate release remains pending.

## II

Our review of a district court's denial of a sentence-reduction motion pursuant to section 3582(c)(1)(A) is for abuse of discretion.  See United States v. Saccoccia, 10 F.4th 1, 4-5 (1st Cir. 2021).  This is a respectful standard under which we assess factual determinations for clear error, evaluate claims of legal error de novo, and afford judgment calls a measure of deference. See id.

At the outset, the defendant draws our attention to a growing consensus among the courts of appeals.  This consensus holds that even though the compassionate-release statute requires a district court to ensure that any sentence reduction is "consistent" with "applicable" policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A), the current

policy statement is not "applicable" to prisoner-initiated motions for compassionate release (as contrasted with motions brought by the BOP).  See Saccoccia, 10 F.4th at 7-8 (collecting cases).  We previously have explained the circumstances giving rise to the doubts about whether the current policy statement is "applicable" to prisoner-initiated motions, see id., and it would serve no useful purpose to repastinate that ground.  As we explain below, the issue is not one that we must decide today.

On the "policy statement" front, the defendant's argument rests on unbridled speculation that the district court regarded the current policy statement as applicable and constrained its analysis accordingly.  But the district court made it sufficiently clear that — regardless of whether the Sentencing Commission's current policy statement was applicable — the defendant had failed to demonstrate an extraordinary and compelling reason.

We need not tarry.  The court below plainly concluded — without any reference to the policy statement — that the defendant "ha[d] not identified any extraordinary or compelling reason for reduction of his sentence."  This explicit statement shows with conspicuous clarity that the court considered and rejected all of the defendant's proffered reasons.  Nothing in the court's order suggests that this blanket rejection was either based on or constrained by the current policy statement.

To be sure, the parties advanced below differing views as to whether the current policy statement has any bearing upon prisoner-initiated compassionate-release motions. The defendant argued that the current policy statement should be disregarded, and the government countered that it should be seen as a constraint. Viewed against this backdrop, the most sensible understanding of the district court's decision not to address this dispute is that it did not regard the dispute as outcome-determinative. Such an understanding is buttressed by what the district court said in its order. After determining that no extraordinary and compelling reasons had been identified, the district court acknowledged that "even if an inmate's health [were] at risk (which is not the case here), or even if the inmate me[t] one or more of the parameters" in the policy statement, compassionate release may be denied. Had the district court treated the policy statement's categories of extraordinary and compelling reasons as binding, it would have referred only to those categories. Here, however, the district court identified an alternative to those categories (extraordinary and compelling reasons based on other health risks). The necessary implication is that the court's analysis was not constrained by the policy statement.

The defendant's most loudly bruited counter-argument is that we can infer that the district court thought itself

constrained by the current policy statement because some of the order's reasoning parallels points made in the government's briefing. This is a bridge too far and, in any event, the defendant's observation cuts the other way: despite buying into several of the government's arguments, the district court felt free to bypass the "policy statement" contretemps.[1] The most cogent explanation for that bypass is that the issue did not matter.

The defendant argues, in the alternative, that the district court's order is ambiguous as to whether it considered the current policy statement binding. He also argues more broadly — relying on the Supreme Court's seminal sentencing decisions in Gall v. United States, 552 U.S. 38, 51 (2007), and Rita v. United States, 551 U.S. 338, 356 (2007) — that the district court failed adequately to explain its reasons for denying relief. Assuming, without deciding, that those standards apply on review of a denial of a compassionate-release motion, the district court's explanation passes muster. The order is admittedly brief, but in

---

[1] The defendant also tries to bootstrap his argument based on the district court's generalized reference to cases relied on by the government. But the defendant identifies only one case that adhered to the policy statement criteria, see United States v. Horton, No. 13-16, 2020 WL 4473405, at *3-4 (M.D. Pa. Aug. 4, 2020), and the district court did not mention that case. By contrast, the case cited by the district court eschewed any resolution of the "policy statement" issue. See United States v. Gianelli, 513 F. Supp. 3d 199, 200-01 (D. Mass. 2021).

sentencing matters, "brevity is not to be confused with inattention." United States v. Dávila-González, 595 F.3d 42, 48 (1st Cir. 2010) (quotations omitted). Rather, the key consideration is whether the appellate court can discern that the lower court had "a reasoned basis" for its decision. Rita, 551 U.S. at 356; see Dávila-González, 595 F.3d at 48. As explained above, we can deduce from the order — despite its brevity — that the district court concluded that whether the policy statement was binding made no difference to its determination that the defendant's asserted reasons were not enough to justify compassionate release.

The defendant's broader remonstrance fares no better. He claims that the district court merely adopted the arguments from the government's briefing but turned a blind eye to the defendant's arguments regarding his specific medical conditions. At bottom, though, this is not a complaint that the decision reflects inadequate reasoning but, rather, a complaint that the district court's completely adequate reasoning did not mirror the defendant's views. And — as is evident by our ensuing analysis — the district court's choice not to embrace the defendant's medical-related arguments was a reasoned one. Consequently, we proceed to the defendant's remaining claims of error.

This brings us to the meat of the appeal: the district court's conclusion that the defendant's proffered reasons were insufficient to warrant compassionate release. The pivotal question is whether the district court abused its discretion in holding that the particular circumstances identified by the defendant failed to justify compassionate release.

Compassionate release under section 3582(c)(1)(A)(i) demands that there must be a reason or set of reasons for compassionate release that is both "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). Congress — apart from stating that rehabilitation alone "shall not be considered an extraordinary and compelling reason" for compassionate release — did not elucidate this standard. 28 U.S.C. § 994(t). Assuming, as we do, that a court adjudicating a prisoner-initiated motion for compassionate release may venture beyond the confines of the Sentencing Commission's current policy guidance, the "extraordinary and compelling" standard is logically guided by the plain meaning of those terms.

The plain meaning of "extraordinary" suggests that a qualifying reason must be a reason that is beyond the mine-run either in fact or in degree. See Webster's Third New International Dictionary of the English Language Unabridged 807 (1981) (defining "extraordinary" as "going beyond what is usual, regular, common,

or customary"); see also United States v. Hunter, 12 F.4th 555, 562 (6th Cir. 2021) (suggesting that such reason must be "most unusual," "far from common," or "hav[e] little or no precedent"). By the same token, the plain meaning of "compelling" suggests that a qualifying reason must be a reason that is both powerful and convincing. See Webster's Third, supra at 462 (defining "compelling" as "forcing, impelling, [or] driving [circumstance]" and as "tending to convince or convert by or as if by forcefulness of evidence"); see also Hunter, 12 F.4th at 562. Benchmarked against those definitions, the district court acted within the ambit of its discretion in concluding that the defendant's proffered reasons for compassionate release fell short.

## A

To begin, we consider the defendant's proffered medical reasons and risk of illness from COVID-19. The district court did not say whether or not the defendant's proffered medical reasons exhibited an exceptional medical need. Rather, the court made a factual determination that although the defendant had pre-existing medical infirmities and eventually contracted COVID-19, he was "being closely monitored" and his health was in "stable" condition.

The defendant does not make any concerted effort to challenge those findings. Nor would such an effort be fruitful: the defendant's medical records unequivocally show that after contracting COVID-19, he remained "[a]symptomatic," that BOP

medical staff confirmed that he exhibited no untoward symptoms, and that his oxygen levels and temperature were well within normal ranges.

The defendant urges us not to take the medical records at face value. Despite what they show, he strives to persuade us that the possibility of severe illness from COVID-19 — considering factors like his comorbidities and the conditions of his confinement — remain extraordinary and compelling reasons for compassionate release.[2] We are not persuaded.

The district court made a reasonable risk assessment and determined that the current state of the defendant's health and the care that he was receiving weighed against a finding that an extraordinary and compelling reason existed for compassionate release. This amounted to a judgment call — a judgment call that falls within the wide compass of the district court's discretion. As we have said, "not every complex of health concerns is sufficient to warrant compassionate release . . . even in the midst of the COVID-19 pandemic." Saccoccia, 10 F.4th at 5. Consequently, we leave intact the district court's reasonable determination that the defendant failed to proffer an

_____

[2] We note that the defendant — who declined the vaccine shortly after the district court's denial of his compassionate-release motion — has since been fully vaccinated.

- 13 -

extraordinary and compelling medical reason for compassionate release.

**B**

We turn next to the defendant's claim that a putative sentencing error should tip the balance toward finding an extraordinary and compelling reason for compassionate release. This claim of error has its genesis in United States v. Almonte-Reyes, which was decided several years after the defendant's revocation sentence was imposed. There, we interpreted 18 U.S.C. § 3584(a) and determined that a federal sentencing court lacks the authority to direct that a sentence run consecutively to a federal sentence yet to be imposed. See 814 F.3d at 28.

The defendant posits that if the D.P.R. court had the benefit of Almonte-Reyes, it would not have run (and could not lawfully have run) the revocation sentence consecutive to the not-yet-imposed D.V.I. sentence. Building on this foundation, the defendant further posits that if the D.V.I. court had been writing on a clean slate — unconstrained by the D.P.R. court's declaration that the revocation sentence was to run consecutively — it would have imposed its sentence to run concurrently with the D.P.R. sentence. In that event, the defendant asserts, he already would have served both sentences in full.

It was comfortably within the district court's discretion to conclude that the putative sentencing error was

insufficient to warrant compassionate release. Though perhaps extraordinary, that putative sentencing error did not — in the circumstances of this case — afford a compelling reason to reduce the defendant's sentence.[3]

A close look at the defendant's situation leaves no doubt that his proffered reason cannot be classified as "compelling." He has provided no evidence of any disparity between his aggregate sentence and the aggregate sentence that would have resulted had both sentences been imposed after Almonte-Reyes. He does no more than suggest that had his revocation sentence not been imposed in contravention of the rule later announced in Almonte-Reyes, he "may" have been eligible for release at an earlier date.

The defendant's suggestion is woven entirely from gossamer strands of speculation and surmise. He gave the court below no basis for concluding that, had the D.P.R. court not run the revocation sentence consecutive to the not-yet-imposed D.V.I.

---

[3] Although the district court reasonably rejected the claim that the putative sentencing error constituted an extraordinary and compelling reason for compassionate release, the defendant seizes on the district court's statement addressing the consecutive nature of the sentence to suggest that the district court committed legal error. This is too much of a stretch: the statement seems to describe the D.V.I. court's judgment (as the defendant concedes), and the district court's awkward phrasing is best understood as an attempt to explain that any Almonte-Reyes error was harmless. Given that the parties' briefs in the court below were crystal clear on this point, we think that — contrary to the defendant's importunings — this imprecision affords insufficient reason to believe that the district court misunderstood the parties' arguments.

sentence, the D.V.I. court would have proceeded to impose a fully concurrent sentence. The D.V.I. judgment did not mention the revocation sentence, and the default rule is that those sentences would run consecutively. See 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."). Apart from the D.V.I. court's silence on the subject, it also should be noted that the D.V.I. court imposed a downwardly variant sentence (more than sixty months below the bottom of the guideline range). Given this largesse, there is nothing to support the defendant's conjecture that the D.V.I. court — were it free to do so — would have opted to run the two sentences concurrently. In short, the defendant offered nothing that might have persuaded the district court (or this court, for that matter) that the putative Almonte-Reyes error lengthened his aggregate sentence at all.

So, too, the defendant failed to present any idiosyncratic circumstances sufficient to buttress his claim. The district court's appraisal of the sentencing factors suggests that it believed the sentence to be appropriate, given the nature of the offense and the history and characteristics of the offender. Even though the defendant offered evidence of his claimed rehabilitation, the district court — after it marshalled various

sentencing considerations militating against compassionate release — was unconvinced.[4]

The defendant counters that the putative Almonte-Reyes error is both extraordinary and compelling, asserting that it was a non-retroactive decision that could not have been the basis for any timely post-conviction challenge. In mounting this assertion, he draws on a handful of decisions in which courts have acknowledged that claims involving non-retroactive changes in law affecting sentencing exposure may constitute an extraordinary and compelling reason sufficient to justify compassionate release. See, e.g., United States v. Maumau, 993 F.3d 821, 837 (10th Cir. 2021); United States v. McGee, 992 F.3d 1035, 1047-48 (10th Cir. 2021); United States v. McCoy, 981 F.3d 271, 285-87 (4th Cir. 2020). Even if we accept, for argument's sake, the logic of the decisions that he embraces, those cases do not go so far as to hold that such a change in the law, without more, may comprise an extraordinary and compelling reason sufficient to warrant compassionate release. Rather, they suggest that the changed legal

---

[4] Because the district court reasonably concluded that the defendant failed to demonstrate an extraordinary and compelling reason for compassionate release, we need not address in detail its review of the universe of sentencing factors. We note, however, that a district court's supportable determination that the section 3553(a) factors weigh against the granting of compassionate release constitutes an independently sufficient basis to uphold a denial of such relief. See Saccoccia, 10 F.4th at 4.

- 17 -

landscape must be considered in view of a defendant's particular circumstances. See, e.g., Maumau, 993 F.3d at 838 (Tymkovich, J., concurring) ("[A] district court may consider the legislative change to the stacking provision only in the context of an individualized review of a movant's circumstances."); McGee, 992 F.3d at 1048 (reasoning that the First Step Act's non-retroactive amendments might rise to the level of "extraordinary and compelling reasons" when considered in combination with "a defendant's unique circumstances"); McCoy, 981 F.3d at 285-87 (holding that the First Step Act's changes to section 924(c), in combination with the resulting "disparity," may amount to "extraordinary and compelling" reasons). As we previously have stated, the circumstances the defendant presented were insufficient to make his claim compelling.

That ends this aspect of the matter. We hold that the district court did not abuse its discretion in rejecting the defendant's plea that the putative Almonte-Reyes error warranted a reduction of his sentence.

**IV**

We need go no further. The short of it is that our examination of the record reveals that the court below did not trespass — or even closely approach — the margins of its broad discretion in denying the defendant's compassionate-release

motion.  For the reasons elucidated above, the judgment of the district court is

**Affirmed**.