# United States Court of Appeals
## For the First Circuit

No. 22-1007

UNITED STATES OF AMERICA,

Appellee,

v.

ALFREDO GONZALEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Kayatta, Lynch, and Howard,
Circuit Judges.

K. Hayne Barnwell for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom
Jane E. Young, United States Attorney, and Alexander S. Chen,
Assistant United States Attorney, were on brief, for appellee.

May 25, 2023

**HOWARD**, **Circuit Judge**. This appeal requires us to elaborate on our recent decision requiring a "holistic approach" when considering compassionate release motions that are not governed by the U.S. Sentencing Commission's policy statement in U.S.S.G. §1B1.13. United States v. Trenkler, 47 F.4th 42, 50 (1st Cir. 2022). Defendant-appellant Alfredo Gonzalez contends that the district court, without having had the benefit of our decision in Trenkler, ran afoul of our guidance therein in evaluating his compassionate release motion. He consequently urges us to remand for resentencing. Because we determine that no such error occurred, we affirm the judgment of the district court. In doing so, we also reaffirm that even a holistic review of a compassionate release motion under Trenkler should be guided by the defendant's presentation of his own arguments.

## I.

We previously summarized the factual background of Gonzalez's case in his post-conviction appeal, see United States v. Gonzalez, 949 F.3d 30, 32-34 (1st Cir. 2020), and at this juncture we recite only the procedural background that postdates that decision. After we affirmed his conviction and sentence, Gonzalez moved in early 2021 for a reduction of his prison sentence under 18 U.S.C. § 3582(c)(1)(A), as revised by the First Step Act ("FSA"). See Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018). The Act went into effect approximately six months after

the district court sentenced Gonzalez to a 240-month term of imprisonment and, as described in more detail below, "created a new regime in which -- for the first time -- prisoners [could] seek compassionate release even when the [Bureau of Prisons ('BOP')] does not deign to act on their behalf." United States v. Ruvalcaba, 26 F.4th 14, 22 (1st Cir. 2022).[1]

Crucially for the purposes of this appeal, Gonzalez's motion to the district court presented two alternative arguments in favor of compassionate release. He urged the district court either to release him from prison immediately on account of medical preconditions "that increase his risk for serious illness or death from COVID-19," or -- "if the court denies [his] request to be released immediately" -- to reduce his sentence on account of "a gross sentencing disparity." The latter argument was, in turn, undergirded by two points. Gonzalez first noted that his November 2017 conviction and the district court's subsequent imposition of his sentence in June 2018 occurred during a nineteenth-month window between (1) the end, in May 2017, of a previously more lenient Justice Department policy about federal prosecutors' use of the sentence-enhancement regime of 21 U.S.C. § 851 and (2) the

---

[1] As noted by the Second Circuit, "compassionate release is a misnomer" for the sentence-reduction provision of § 3582(c)(1)(A). United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020). We nevertheless opt to use "compassionate release" as a shorthand for the provision, in line with common practice.

subsequent passage of the FSA in December 2018. That timing meant that Gonzalez was subjected to a lengthy 20-year mandatory minimum sentence, to which -- as the government conceded -- he in all likelihood would not have been subjected had he been sentenced outside of this window. He also objected in relevant part that he received a "substantially higher" sentence than his codefendants, a disparity that he contended was driven at least in part by the government's filing of an § 851 information.

The government responded -- incorrectly, as it would turn out -- that the district court was bound to follow the policy statement of U.S.S.G. §1B1.13 in assessing Gonzalez's motion. It consequently argued that the district court should not grant the motion under the framework of that provision because, despite being admittedly "eligible for compassionate release based on his medical condition," Gonzalez was "a danger to the community." See U.S.S.G. §1B1.13(2) (providing that a district court cannot reduce a prison term under that provision if the defendant is "a danger to the safety of any other person or to the community"). The government also asserted with reference to the factors of 18 U.S.C. § 3553(a) that "the seriousness of the defendant's criminal conduct and the danger he poses to the public militate against a sentence reduction." After the court ordered the government to file supplemental briefing addressing Gonzalez's sentencing disparity arguments, the government additionally contended in

- 4 -

relevant part that granting compassionate release based on a sentencing disparity caused by the FSA would "undermin[e] [the FSA's] non-retroactivity provisions." See FSA § 401(c), 132 Stat. at 5221.

The district court ultimately granted Gonzalez's request for a sentence reduction, but not immediate release. The court accurately presaged our subsequent ruling in Ruvalcaba, holding that U.S.S.G. §1B1.13 did not apply to Gonzalez's compassionate release motion. Having freed itself from the strictures of that provision, the court wrote that it was persuaded that the sentence it had imposed was "disproportionately harsh" with reference both to the nineteen-month window described above and to Gonzalez's codefendants, even though "Gonzalez committed a serious crime." It concluded that resentencing was thus warranted. Nevertheless, the court noted in a footnote prior to its sentence-reduction discussion that it was "not persuaded that Gonzalez's health status qualifies as an extraordinary and compelling circumstance that justifies his immediate release," both because of (1) the BOP's mitigation measures and the availability of COVID-19 vaccines and (2) the fact that Gonzalez "committed a serious crime that warrants a lengthy prison sentence."

The district court proceeded to reduce Gonzalez's sentence from 240 to 180 months. This appeal followed.

**II.**

"We review a district court's denial or grant of a compassionate release motion for abuse of discretion." Trenkler, 47 F.4th at 46. "Questions of law are reviewed de novo and findings of fact are reviewed for clear error." Id.

**III.**

As alluded to above, Gonzalez's primary argument on appeal is that the district court used the "singular[,] reason-by-reason analysis" against which we warned in Trenkler by "fail[ing] to assess the COVID-19 factors [that Gonzalez raised] along with the gross sentencing disparity" when it evaluated his compassionate release motion. Gonzalez's argument is that Trenkler worked a sea change in our law. It did not -- nor did it purport to do so.

**A.**

On a preliminary note, our framing of Gonzalez's arguments is informed by this appeal's unique procedural history. Gonzalez originally did not predicate his appellate arguments on Trenkler, a decision that postdated the filing of his opening brief by several weeks. Rather, he advanced several unavailing arguments that we describe in more detail below. We then ordered the parties to address the impact of Trenkler on Gonzalez's case in their subsequent briefs, and Gonzalez duly focused on Trenkler in his reply brief and at oral argument. We now do so as well, recognizing

- 6 -

that complying with our court's express order to present arguments on a certain issue calls for applying the "exception [to the usual rule of reply-brief waivers] where 'justice so requires' and where the opposing party would not be unfairly prejudiced by our considering the issue." United States v. Fields, 823 F.3d 20, 32 n.8 (1st Cir. 2016) (quoting United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011)).

We nevertheless note that we are unpersuaded by Gonzalez's original arguments. He first claimed that the district court clearly erred in its analysis of the risks of a COVID-19 reinfection and, relatedly, of the BOP's mitigation measures, including administering the COVID-19 vaccine. But, as Gonzalez recognizes, the clear-error standard is a high hurdle to clear: "[c]lear error 'exists only when we are left with the definite and firm conviction that a mistake has been committed.'" United States v. Centeno-González, 989 F.3d 36, 50 (1st Cir. 2021) (quoting United States v. Hicks, 575 F.3d 130, 138 (1st Cir. 2009)). And, despite Gonzalez's attempts to distinguish his case from our decision in United States v. Canales-Ramos, that case is instructive for the proposition that we should be especially loath to disrupt a district court's "judgment call[s]" concerning a defendant's health status in the context of a compassionate release motion. 19 F.4th 561, 567 (1st Cir. 2021); see id. ("The district court made a reasonable risk assessment and determined that the

- 7 -

current state of the defendant's health and the care that he was receiving weighed against a finding [of] an extraordinary and compelling reason. . . . '[N]ot every complex of health concerns is sufficient to warrant compassionate release[.]'" (quoting United States v. Saccoccia, 10 F.4th 1, 5 (1st Cir. 2021))).

Mindful of those considerations, we discern no clear error in the district court's analysis of the COVID-19 risks. Gonzalez's counsel acknowledged to the district court that, even with the evidence he presented, "we just don't really fully have our arms around what the risk of reinfection is," and that the evidence at the time speculatively suggested "real concerns" of reinfection. And the district court explicitly said it was willing to reconsider its assumption that "reinfection is relatively rare" if Gonzalez presented it with "better evidence." Far from being left with a "firm conviction that a mistake has been committed" or a sense that the district court made an "[un]reasonable risk assessment," we glean from this record that the court came to a defensible, if debatable, conclusion based on the as-yet-emergent body of evidence before it. Cf. United States v. Correa-Osorio, 784 F.3d 11, 24 (1st Cir. 2015) ("[A] party cannot show clear error if there are competing views of the evidence.").

Gonzalez's arguments about the district court's reliance on BOP mitigation efforts and vaccination are no more persuasive on the same logic. The relevant footnote in the district court's

- 8 -

opinion suggests that the court did not, as Gonzalez claims, "find[] that BOP mitigation efforts were adequate to protect [him] from harm," nor "assume[] that vaccination would eliminate Gonzalez's risks from another COVID-19 infection." Rather, the district court noted that these mitigation efforts only cumulatively reinforced its conclusion that the COVID-19 concerns did not rise to the level of an extraordinary and compelling circumstance.

Gonzalez's contention that the district court erred by "failing to consider [Gonzalez's COVID-19-related arguments] under [18 U.S.C.] § 3553(a)" is also without merit. The district court was under no obligation to repeat these arguments in its § 3553(a) analysis. "Our case law is pellucid that a district court, when conducting a section 3553(a) analysis, need not tick off each and every factor in a mechanical sequence. Instead, we presume -- absent some contrary indication -- that a sentencing court considered all the mitigating factors and that those not specifically mentioned were simply unpersuasive." Saccoccia, 10 F.4th at 10 (citation omitted). In addition, to the extent that Gonzalez takes issue with the district court for seemingly not factoring in the COVID-19 arguments in its sentence reduction analysis, we cannot fault the court for following Gonzalez's own lead, as further discussed below, see infra, section III.C.

Finally, Gonzalez originally urged us to remand his case so that "the District Court [could] consider the latest developments concerning high reinfection rates of vaccinated people, waning immunity, and decreased vaccine effectiveness against the Omicron subvariants." It is true that our court in Trenkler "permitted [the district court] to consider any factual developments that ha[d] transpired since it[]" issued its original opinion. 47 F.4th at 50. But we see no reason to do so here, where -- unlike in Trenkler -- we discern no potential error in the district court's analysis that would warrant remanding in the first place.

**B.**

A district court exercising its powers to reduce a sentence of imprisonment under § 3582(c)(1)(A) ordinarily must ensure that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." However, as we explained in Ruvalcaba, no such statement currently exists with respect to prisoner-initiated motions: U.S.S.G. §1B1.13 "was last modified in November of 2018 -- before the FSA amended the compassionate-release statute to allow for prisoner-initiated motions . . . [-- and] [t]he text of the current policy statement makes pellucid that it is 'applicable' only to motions for compassionate release commenced by the BOP." 26 F.4th at 20; see also U.S.S.G. §1B1.3 ("Upon motion of the Director of the Bureau

- 10 -

of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." (emphasis added)).  "The policy statement is therefore not 'applicable,' on a literal reading, to motions brought by prisoners; it applies only to motions brought by the BOP."  Ruvalcaba, 26 F.4th at 20.[2]

In the absence of an applicable policy statement, we determined in Ruvalcaba that a district court "may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief," id. at 28, with the exception of rehabilitation alone, since Congress explicitly mandated that such a rationale "shall not be considered an extraordinary and compelling reason."[3]  28 U.S.C. § 994(t).  We

---

[2]  We note that this window may well be closing, as the Sentencing Commission voted to amend U.S.S.G. §1B1.13 to reflect the FSA's changes to 18 U.S.C. § 3582(c)(1)(A).  See Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254, 28254-59 (May 3, 2023); see also Ruvalcaba, 26 F.4th at 23-24 ("If and when the Sentencing Commission issues updated guidance applicable to prisoner-initiated motions for sentence reductions consistent with both section 3582(c)(1)(A) and the statutory mandate under [28 U.S.C. § 994(t)], district courts addressing such motions not only will be bound by the statutory criteria but also will be required to ensure that their determinations of extraordinary and compelling reasons are consistent with that guidance.").

[3]  We have also clarified that "the mere fact of a 'pre-First Step Act mandatory life sentence imposed under [21 U.S.C.] § 841(b)(1)(A) cannot, standing alone, serve as the basis for a sentence reduction under [section] 3582(c)(1)(A)(i),'" Ruvalcaba, 26 F.4th at 28 (second alteration in original) (quoting United States v. McGee, 992 F.3d 1035, 1048 (10th Cir. 2021)), and that "correct application of the 'extraordinary and compelling' standard for compassionate release naturally precludes classic

- 11 -

then expounded upon the "any complex of circumstances" approach in Trenkler, reasoning that "district courts should be mindful of the holistic context of a defendant's individual case when deciding whether the defendant's circumstances satisfy the 'extraordinary and compelling' standard." 47 F.4th at 49-50. We remanded in that case because the "analytical path" that the district court took in analyzing the arguments Trenkler put forward for compassionate release -- and, consequently, in ultimately granting his motion -- was "susceptible to multiple interpretations," although it was at least evident that the court found the undisputed sentencing error that marred Trenkler's case persuasive in that regard. Id. at 46, 50. We noted that,

> [o]n one hand, we can appreciate the possibility that the district court discarded Trenkler's other proposed reasons [apart from the sentencing error] one by one but, with the holistic context of those reasons in mind, deemed the circumstances surrounding the sentencing error alone to meet the "extraordinary and compelling" criteria. But we can also see how discarding all proposed reasons except one could represent a singular reason-by-reason analysis, not a review of the individual circumstances overall. In the end, our careful review of the district court's thorough (but pre-Ruvalcaba) decision leaves us uncertain as to whether it took a holistic approach when reviewing Trenkler's proposed reasons and ultimately concluding that the sentencing error constituted a sufficiently extraordinary and compelling reason to grant relief.

post-conviction arguments, without more, from carrying such motions to success," Trenkler, 47 F.4th at 48.

- 12 -

Id. at 50.

## C.

As noted, Gonzalez urges us to follow in Trenkler's footsteps and remand because, according to him, "the [d]istrict [c]ourt plainly took a 'reason-by-reason' approach[,] rather than a holistic appraisal with respect to [his] sentencing disparity claim and his claim that he was particularly vulnerable to COVID-19." He faults the district court for "fail[ing] to assess the COVID-19 factors along with the gross sentencing disparity suffered by [him], which is [ostensibly] what the holistic analysis requires."

We find no fault in the district court's reasoning under Ruvalcaba and Trenkler. Our court's instruction in Ruvalcaba explicitly stated that a district court can consider "any complex of circumstances raised by a defendant." 26 F.4th at 28 (emphasis added). This focus on the defendant's presentation of his own arguments comports with the notion that "in the first instance and on appeal . . . , we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." United States v. Sineneng-Smith, 140 S. Ct. 1575, 1579 (2020) (alteration in original) (quoting Greenlaw v. United States, 554 U.S. 237, 243 (2008)).

- 13 -

To that end, Gonzalez made it clear to the district court no less than eight times over the course of his briefing and during the hearing on his motion for compassionate release that he meant to advance two alternative arguments, one for immediate release predicated on COVID-19 concerns and another for a reduced sentence based on the sentencing disparity.[4]  In that respect, his presentation of the arguments crucially differs from Trenkler's, who by our court's count proffered five combined reasons in support of his motion for compassionate release.  Trenkler, 47 F.4th at

---

[4]  As his counsel pointed out at oral argument before us, Gonzalez did at one point in his brief to the district court state that his "medical vulnerability to COVID-19 and gross sentencing disparity, either separately or in combination, constitute extraordinary and compelling reasons to reduce his sentence." However, when weighed against his multiple and consistent statements to the district court -- both in his briefing and in the subsequent hearing -- that the two arguments were meant to be proffered as separate alternatives, we do not accept the contention that this statement alone could have alerted the district court to an argument incorporating COVID-19 concerns as part of the sentence-reduction analysis, or vice-versa.  Cf. United States v. Nieves-Meléndez, 58 F.4th 569, 579 (1st Cir. 2023) ("'[A] litigant has an obligation to spell out its arguments squarely and distinctly' before the district court." (quoting United States v. Diggins, 36 F.4th 302, 319 (1st Cir. 2022))).

Moreover, while Gonzalez's counsel did also state at the hearing that the district court could factor the sentencing-disparity issues as an "[18 U.S.C.] § 3553(a) factor[]" if it accepted the immediate release argument, we note that an argument for including a factor in the district court's § 3553(a) analysis differs from an argument that the same factor should constitute an "extraordinary and compelling reason[]" for compassionate release under § 3582(c)(1)(A).  See Saccoccia, 10 F.4th at 4 (characterizing a district court's "extraordinary and compelling" and § 3553(a) analyses as separate findings under § 3582(c)(1)(A)).

45. Ruvalcaba also offered to the district court multiple arguments in favor of reducing his sentence, without seeking different remedies based on the separate arguments, thereby similarly differentiating his motion from Gonzalez's bifurcated argument. See Memorandum in Support of Motion to Reduce Sentence at 31, United States v. Ruvalcaba, No. 05-cr-10037 (D. Mass. Mar. 23, 2020), ECF No. 510; Supplemental Motion to Reduce Sentence at 5, United States v. Ruvalcaba, No. 05-cr-10037 (D. Mass. Apr. 21, 2020), ECF No. 512.

Given these discrepancies, we conclude from the record before us that it was eminently reasonable for the district court to follow Gonzalez's lead in analyzing the two factors separately, especially since Gonzalez sought different forms of relief under each argument. Cf. United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) (noting that, under § 3582(c)(1)(A), "[a] district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place"). We moreover take this opportunity to clarify that, while courts should still follow the "any complex of circumstances" approach under Ruvalcaba for as long as no applicable policy statement applies to prisoner-initiated motions for compassionate release, this approach should be shaped by the arguments advanced by defendants. After all, "as a general rule, '[o]ur adversary system

is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.'"  Greenlaw, 554 U.S. at 244 (quoting Castro v. United States, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)).

## IV.

For the foregoing reasons, the judgment of the district court is **affirmed**.