# United States Court of Appeals
## For the First Circuit

No. 22-1790

UNITED STATES OF AMERICA,

Appellee,

v.

HECTOR RODRIGUEZ-PENA,
a/k/a Papo Guame,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Kayatta, Gelpí, and Rikelman,
Circuit Judges.

Rafael F. Castro Lang on brief for appellant.
Thomas F. Klumper, Assistant United States Attorney, W.
Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, on brief for
appellee.

July 16, 2024

**GELPÍ**, **Circuit Judge**.  This is Hector Rodriguez-Pena's ("Rodriguez-Pena")[1] most recent appeal concerning his imprisonment and convictions for drug trafficking, firearms possession, and the attempted murder of federal law enforcement officers.  He appeals the district court's denial of his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).  The district court concluded that Rodriguez-Pena did not show extraordinary and compelling reasons for a sentence reduction.  We affirm.

## I. BACKGROUND

We recount only the facts necessary to our decision.  For more detail about the underlying offenses and Rodriguez-Pena's appeals, an interested reader can consult United States v. Rodriguez-Pena, 54 F.3d 764 (1st Cir. 1995) (unpublished table decision) and United States v. Rodríguez-Peña, 470 F.3d 431 (1st Cir. 2006) (per curiam).

From 1991 to 1992, Rodriguez-Pena conspired with others to smuggle marijuana and cocaine into Puerto Rico.  Rodriguez-Pena, 1995 WL 275691, at *1.  During this conspiracy, he aided and

---

[1] We refer to Hector as "Rodriguez-Pena" without accented characters because that is how he spelled his name in his opening and reply briefs.  See United States v. Rosa-Borges, 101 F.4th 66, 69 n.1 (1st Cir. 2024).

- 2 -

abetted the attempted murder of three law enforcement officers. Id. at *2-3, 13.

Rodriguez-Pena and his co-conspirators were charged in a twelve-count, second superseding indictment. A jury convicted Rodriguez-Pena on June 21, 1993, of eight counts: (1) Counts One, Two, and Three, conspiring to import, importing, and possessing with the intent to distribute controlled substances, 21 U.S.C. §§ 963, 841(a)(1), 952(a); (2) Count Four, using a telephone in furtherance of drug trafficking, 21 U.S.C. § 843(b); (3) Count Six, possessing a firearm during the commission of drug trafficking, 18 U.S.C. § 924(c)(1); and (4) Counts Seven, Eight, and Nine, aiding and abetting attempted murder of federal officers in the line of duty, 18 U.S.C. §§ 2, 1114. Rodriguez-Pena, 1995 WL 275691, at *11. On October 18, 1993, he was sentenced to 360 months' imprisonment on Count Six and 262 months' imprisonment on the remaining counts. The terms of imprisonment ran consecutively, totaling 622 months' imprisonment.[2]

For the past thirty years, Rodriguez-Pena has challenged his sentence and conviction in a myriad of ways. He first directly appealed his conviction and sentence. Id. We affirmed. Id. at

---

[2] Rodriguez-Pena was also sentenced to five years' supervised release on Counts One, Two, Three, and Six; one year of supervised release on Count Four; and three years' supervised release on Counts Seven, Eight, and Nine, to run concurrently and to begin after he completes his term of imprisonment.

*19. He then attacked his sentence collaterally under 28 U.S.C. § 2255 and moved several times for sentencing modifications, corrections, or reductions. The district court rejected these motions, and we affirmed whenever we were brought into the fray. See, e.g., Rodríguez-Peña, 470 F.3d at 432. The district court, however, on February 4, 2016, ultimately reduced his 262-month term to 210 months in response to an amendment to the Sentencing Guidelines (thus reducing his original, total term of imprisonment to 570 months). See U.S.S.G., App. C Supp., amend. 782 (effective Nov. 1, 2014).

Rodriguez-Pena first moved for compassionate release to reduce his total sentence to 360 months' imprisonment on February 17, 2021. He premised his motion upon one extraordinary and compelling reason: his vulnerability to COVID-19, having tested positive for the virus on July 23, 2020. He attributed catching the virus and his risk of reinfection to the virus's prevalence in Federal Correctional Institution Coleman Low ("FCI Coleman Low"), where he is incarcerated. He argued that because he was overweight and has high blood pressure, hypertension, and hyperlipidemia (high cholesterol), he faced an increased risk of serious complications if he was reinfected. Likewise, he proffered evidence purporting to prove that the conditions in FCI Coleman Low exacerbated the spread of COVID-19. Rodriguez-Pena, moreover, pointed towards his rehabilitation while incarcerated and argued

- 4 -

that this justified his compassionate release under 18 U.S.C. § 3553(a).

After the government opposed, the district court denied the motion in a succinct docket order. Rodriguez-Pena appealed. We then granted the government's "consented-to motion to summarily vacate the district court's order and to remand for further proceedings," United States v. Rodriguez-Pena, No. 21-1635, 2022 WL 1194388, at *1 (1st Cir. Apr. 19, 2022), and, on remand, the parties filed supplemental memoranda in the district court.

The tenor of Rodriguez-Pena's arguments on remand remained the same. He argued that the risk COVID-19 posed to him in FCI Coleman Low was an extraordinary and compelling reason for compassionate release. And he emphasized the prevalence of new variants and the supposed ineffectiveness of and problems with COVID-19 vaccines to bolster his position. This time, he noted that our intervening decision in United States v. Ruvalcaba, 26 F.4th 14, 28 (1st Cir. 2022), required district courts to weigh "any complex of circumstances" that a defendant presents in support of compassionate release and determine if those circumstances -- whether individually or together -- are extraordinary and compelling. As for § 3553(a), he noted that the district court ought to conclude that his rehabilitation while incarcerated favored compassionate release.

In its supplemental memorandum, the government opposed both prongs of Rodriguez-Pena's renewed arguments. Relevant here, it outlined the plan by the Bureau of Prisons ("BOP") to mitigate the spread of COVID-19. That plan employed social distancing, quarantining, regular testing, and vaccination. The government explained how this greatly reduced the spread in FCI Coleman Low, so much so that only one inmate out of 1,935 at the facility had tested positive for COVID-19 at the time of Rodriguez-Pena's motion.

The district court denied the motion on two grounds. First, it rejected Rodriguez-Pena's "extraordinary-and-compelling"argument premised on COVID-19. It concluded that Rodriguez-Pena had demonstrated neither "a particularized susceptibility to the disease" nor "a particularized risk of contracting the disease at his prison facility" (quoting United States v. Gandía-Maysonet, 96-CR-304, 2021 WL 219191, at *1 (D.P.R. Jan. 21, 2021)). It pointed out that Rodriguez-Pena was fully vaccinated -- having "received two doses of the Moderna Covid-19 vaccine and a booster shot in February[]2022" -- against COVID-19 and in good health, despite his medical conditions. It bolstered this point by noting that, when Rodriguez-Pena tested positive for COVID-19 in 2020, he was asymptomatic. Because only one inmate in FCI Coleman Low was diagnosed with COVID-19 at the time of Rodriguez-Pena's motion, then the district court also found it unlikely that he risked

reinfection. And it rejected his contention that COVID-19 vaccines are ineffective, stating that his position was "contradicted by a wealth of competent medical data." It described the data that he offered showing high COVID-19 transmission rates in FCI Coleman Low as "outdated" and noted that "the risks to [him] have abated significantly since the time he requested compassionate release." Second, the district court found that the § 3553(a) factors did not warrant compassionate release.

Rodriguez-Pena timely appealed.

## II. DISCUSSION

### A. Standard of Review

"We review a district court's denial or grant of a compassionate release motion for abuse of discretion. Questions of law are reviewed de novo and findings of fact are reviewed for clear error." United States v. Gonzalez, 68 F.4th 699, 702 (1st Cir. 2023) (citations omitted).

### B. Extraordinary and Compelling Reasons

Rodriguez-Pena contends (1) that the district court erred because it did not consider whether his health conditions and vulnerability to COVID-19, FCI Coleman Low's inability to prevent COVID-19's spread, and his rehabilitation while imprisoned holistically constituted an "extraordinary and compelling reason" for compassionate release; and (2) that the district court ignored his evidence of rehabilitation when it independently denied his

compassionate release motion under § 3553(a). We find that the district court acted within its discretion when it concluded that Rodriguez-Pena did not offer an extraordinary and compelling reason for a sentence reduction, so we affirm on that basis. Cf. PDK Lab'ys, Inc. v. U.S. D.E.A., 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring) ("[I]f it is not necessary to decide more, it is necessary not to decide more . . . .").

Ordinarily, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). But Congress carved out an exception, known commonly as the "compassionate-release statute." United States v. Saccoccia, 10 F.4th 1, 3 (1st Cir. 2021). The compassionate-release statute "authorizes a court upon motion by an incarcerated individual who [(1)] has exhausted [his] administrative remedies to reduce a term of imprisonment when [(2)] extraordinary and compelling reasons warrant such a reduction, and [(3)] when the sentencing factors set forth in 18 U.S.C. § 3553(a) counsel in favor of such a reduction." United States v. Ayala-Vázquez, 96 F.4th 1, 12 (1st Cir. 2024) (internal quotation marks and citations omitted); see 18 U.S.C. § 3582(c)(1)(A).

"A district court exercising its powers to reduce a sentence of imprisonment under § 3582(c)(1)(A) ordinarily must ensure that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" Gonzalez, 68

F.4th at 704. But we held in United States v. Ruvalcaba, 26 F.4th 14, 20 (1st Cir. 2022), that at the time Rodriguez-Pena moved for compassionate release, the Sentencing Commission had not issued a policy statement applicable to prisoner-initiated motions.[3] Without an applicable policy statement to guide them, district courts "may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief."[4] Id. at 28. We have thus cautioned district courts post-Ruvalcaba to "be mindful of the holistic context of a defendant's individual case when deciding whether the defendant's circumstances satisfy the 'extraordinary and compelling' standard" and undertake "a review of the [defendant's] individual circumstances overall." United States v. Trenkler, 47 F.4th 42, 50 (1st Cir. 2022).

This holistic approach is flexible, but it has limits. Because district courts need only consider "any complex of circumstances raised by a defendant," Gonzalez, 68 F.4th at 705 (quoting Ruvalcaba, 26 F.4th at 28), they "need not consider every potential configuration of grounds for compassionate release but,

---

[3] The Sentencing Commission has since reached a quorum and approved a policy statement addressing prisoner-initiated motions for compassionate release and sentence reductions under § 3582(c)(1)(A). See U.S. Sent'g Guidelines Manual § 1B1.13.

[4] Rehabilitation alone cannot be an extraordinary and compelling reason. See 28 U.S.C. § 994(t); Gonzalez, 28 F.4th at 704.

rather, [their] analysis 'should be shaped by the arguments advanced by defendants.'" United States v. Quirós-Morales, 83 F.4th 79, 83 (1st Cir. 2023) (quoting Gonzalez, 68 F.4th at 706). And the "extraordinary and compelling" standard remains "inherently narrow" and "stringent." Trenkler, 47 F.4th at 48 n.14 (quoting Ruvalcaba, 26 F.4th at 23, 29). What constitutes an "extraordinary and compelling" reason should be "logically guided by the plain meaning of those terms." Ruvalcaba, 26 F.4th at 23 (quoting United States v. Canales-Ramos, 19 F.4th 561, 566 (1st Cir. 2021)). A defendant must demonstrate an "extraordinary" reason, meaning "a reason that is beyond the mine-run either in fact or in degree," and one that is "compelling," which "suggests . . . a reason that is both powerful and convincing." Canales-Ramos, 19 F.4th at 566-67 (citations omitted); see, e.g., Ruvalcaba, 26 F.4th at 23.

Rodriguez-Pena argues that the district court erred because it did not employ the totality-of-the-circumstances approach in analyzing his motion. And, in doing so, he contends that his rehabilitation alongside his risk from COVID-19 warranted compassionate release. But the district court's analysis was "shaped by the arguments advanced by [Rodriguez-Pena]," so it did not err in focusing on his risk from COVID-19. Gonzalez, 68 F.4th at 706. Although Rodriguez-Pena characterizes his COVID-19-based extraordinary-and-compelling argument below as "holistic," it

- 10 -

boiled down to one issue: whether his risk from COVID-19 was an extraordinary and compelling reason for release. He did not reference any other circumstance beyond his risk from the virus as presenting an extraordinary and compelling reason.[5] Accordingly, we cannot fault the district court for following his lead. See id. at 705-06 (finding no error in how the district court analyzed the defendant's only proffered reason, his risk from COVID-19, without employing a holistic approach because the district court could rely upon how the defendant framed the issues).

Even if we assume that the district court erred because it did not expressly apply the "holistic" test from Ruvalcaba to Rodriguez-Pena's COVID-19-based argument, its error was harmless. The district court relied on Rodriguez-Pena's multiple vaccinations, the extremely low COVID-19 rates in FCI Coleman Low at the time of his motion, and that he was asymptomatic when he was infected with COVID-19 to conclude that he was not particularly at risk from COVID-19. It thus concluded that, despite his

---

[5] To be fair, Rodriguez-Pena argued below that his rehabilitation while incarcerated warranted release under § 3553(a). But "an argument for including a factor in the district court's § 3553(a) analysis differs from an argument that the same factor should constitute an 'extraordinary and compelling reason[]' for compassionate release under § 3582(c)(1)(A)." Gonzalez, 68 F.4th at 705 n.4 (alteration in original) (citing Saccoccia, 10 F.4th at 4). Rodriguez-Pena did not offer his rehabilitation as an extraordinary and compelling reason for a sentence reduction, so the district court did not err by not considering it at this step.

- 11 -

previous infection and health conditions, the evidence did not meet the extraordinary-and-compelling threshold.

The record supported this conclusion, and we spot no abuse of discretion in it. The district court could thus determine that Rodriguez-Pena's risk from COVID-19 was neither "beyond the mine run" nor "powerful and convincing." Canales-Ramos, 19 F.4th at 566-67 (affirming where the district court weighed the defendant's risk from COVID-19 against his current health and care in prison and concluded that the latter weighed against finding an extraordinary and compelling reason); see also Saccoccia, 10 F.4th at 5 (affirming district court's conclusion that the defendant's risk from COVID-19 due to his hypertension and hyperlipidemia did not present an extraordinary and compelling reason for compassionate release).

On appeal, Rodriguez-Pena quarrels with the district court's fact-bound determinations. He again relies on the evidence that he presented below that vaccines are ineffective and dangerous and that FCI Coleman Low is failing to stop COVID-19's spread, hoping that we will see things differently.

But we are "especially loath to disrupt a district court's 'judgment call[s]' concerning a defendant's health status in the context of a compassionate release motion." Gonzalez, 68 F.4th at 703 (alteration in original) (quoting Canales-Ramos, 19 F.4th at 567). We review these fact-bound determinations for clear

error, which "exists only when we are left with the definite and firm conviction that a mistake has been committed." Id. (quoting United States v. Centeno-González, 989 F.3d 36, 50 (1st Cir. 2021)). Here, the district court weighed the evidence presented to it and found that Rodriguez-Pena's health, his vaccination status, and FCI Coleman Low's then-existing conditions outweighed the virus's risks to him. See, e.g., Canales-Ramos, 19 F.4th at 567 ("The district court made a reasonable risk assessment and determined that the current state of the defendant's health and the care that he was receiving weighed against a finding [of] an extraordinary and compelling reason . . . . '[N]ot every complex of health concerns is sufficient to warrant compassionate release[.]'" (quoting Saccoccia, 10 F.4th at 5)). And, relying on the same record, it specifically rejected his contentions about the ineffectiveness of vaccines and FCI Coleman Low's conditions. Rodriguez-Pena's "competing view[]" of the evidence surrounding his risk from COVID-19 is not enough to demonstrate error. Gonzalez, 68 F.4th at 703 (quoting United States v. Correa-Osorio, 784 F.3d 11, 24 (1st Cir. 2015)). We therefore see no reason to disturb the district court's "defensible . . . conclusion based on the . . . evidence before it." Id.

## III. CONCLUSION

We **affirm**.[6]

---

[6] Because we affirm, Rodriguez-Pena's request to proceed before a different judge on remand is moot.  United States v. Fuentes-Moreno, 954 F.3d 383, 390 n.6 (1st Cir. 2020).